IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02072-MSK-MJW

BRIAN NELSON HANSARD,

Petitioner,

v.

J. M. WILNER,

Respondent.

---

**RECOMMENDATION ON
APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
(Docket No. 1)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter is before this court pursuant to an Order Referring Action issued on October 5, 2009, by District Judge Marcia S. Krieger.  (Docket No. 8).

Petitioner, Brian Nelson Hansard, is a federal prisoner who is incarcerated at USP Florence in Colorado.  Before the court for a report and recommendation is the petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (hereinafter "the petition") (Docket No. 1).  Respondent filed a Response to Order to Show Cause (Docket No. 9) to show cause why the court should deny the petition.  Petitioner did not file a reply.

The court has considered these filings as well as applicable Federal Rules of Civil Procedure, statutes, and case law and has taken judicial notice of the court's file.  The court now being fully informed makes the following findings, conclusions

2

of law, and recommendation. Because the petitioner is proceeding without counsel, the court has "construe[d] his pleadings liberally, but [has not] act[ed] as his advocate." Ford v. Pryor, 552 F.3d 1174, 1178 (10th Cir. 2008).

Petitioner asserts the following in his petition. He challenges the duration of his confinement on the ground that he has been unconstitutionally deprived of 41 days of good-conduct-time credits because his due process rights were violated at a prison disciplinary hearing. He received an incident report on May 7, 2008, for possession of narcotics. On June 20, 2008, he was found guilty of that charge. He claims the institution did not follow its own rules and regulations in connection with his disciplinary hearing when it failed to have the substance that it alleged to be a narcotic tested and analyzed by a laboratory as required by Program Statement 6060.08 or 28 C.F.R. §§ 550.30 and 550.42 which he claims "have been set for drug surveillance which insure that the evidence that is going to be used against an inmate be tested by a laboratory to insure that it's not a false positive." (Docket No. 1 at 3). By not having such laboratory testing, it failed to provide petitioner and the disciplinary hearing officer with exculpatory evidence, namely, the laboratory results, which petitioner claims would show that he never possessed a narcotic. Petitioner also alleges an equal protection violation because the substance was not tested by a laboratory which is done for other inmates who were similarly situated. Petitioner asks that the incident report be expunged from his record and that the institution restore his good time credits.

It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal due process safeguards. See Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996). The Supreme Court, however, held in

3

Wolff v. McDonnell, 418 U.S. 539, 556 (1974), that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Under Wolff, in order to meet the standards of due process in a prison disciplinary proceeding,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Furthermore, the requirements of procedural due process are met if there is just "some evidence" to support the decision to revoke good time credits. Id.; Mitchell, 80 F.3d at 1445. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant conclusion is whether there is **any evidence** that could support the conclusion reached by the disciplinary [hearing officer]." Hill, 472 U.S. at 455-56 (emphasis added). This court's review "is limited to whether the three steps mandated by Wolff were followed and whether there was some evidence to support the [DHO's] findings." Mitchell, 80 F.3d at 1445. Based upon these standards, this court finds that the petitioner received the requisite due process of law.

First, petitioner was given advance written notice of the disciplinary charge. The Incident Report was served on the petitioner on May 8, 2008. In that report, petitioner was charged with "possession of any narcotics." The report stated:

> On 05-07-08 at approximately 6:45 PM I was searching cell 4-3 in Mesa Alpha Unit. I found two small bags of a tan colored substance wrapped tightly in cellophane, in an opening near the bottom of the right hand door

      of the lower unsecured wall locker.  The substance was hard but still
pliable.  At approximately 7:10 PM, I sent the substance to the SIS Office
via Compound Officer to be tested.  The substance was tested with an
NIK test kit A with positive results for Amphetamines.  Inmate Hansard
Reg. #12071-081 was housed in cell 4-3 in M/A Unit and used the lower
locker the substance was found in.

(Docket No. 9-3 at 9).  Petitioner appeared before the Unit Discipline Committee ("UDC") two days later on May 10, 2008.  During that hearing, the petitioner stated that he had moved into the cell four weeks before, and the substance discovered did not belong to him.  (Docket No. 9-3 at 9).  The UDC referred the incident report to the Disciplinary Hearing Officer ("DHO") for disposition.  (Docket No. 9-3 at 10).

      Second, petitioner was given an opportunity to call witnesses and present documentary evidence in his defense.  On May 10, 2008, he was given a form Notice of Discipline Hearing Before the (DHO) which included an advisement of his rights at the discipline hearing and a notice of his disciplinary hearing.  (Docket No. 9-3 at 22).  That hearing was held on June 20, 2008.  (Docket No. 9-3 at 12).  Petitioner was again advised of his rights at that hearing.  Petitioner waived his right to the assistance of a staff representative during the hearing, and he declined the opportunity to call witnesses and to present documentary evidence in his defense.  (Docket No. 9-3 at 12).  He was allowed to make a statement during which he denied the charge.

      Third, petitioner was given a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  More specifically, petitioner was given a written copy of the DHO report on September 15, 2008, which advised him of the decision, the evidence relied upon, the sanctions imposed, and his right to appeal the decision through the administrative remedy process.  (Docket No. 9-3 at 12-13).

5

Finally, there is some evidence that could support the conclusion reached by the DHO. Hill, 472 U.S. at 455-56. "The decision can be upheld even if the evidence supporting the decision is 'meager.'" Mitchell, 80 F.3d at 1445 (citing Hill, 472 U.S. at 457). Here, after considering all of the evidence, the DHO found the petitioner guilty of the prohibited act as charged, making the following findings:

> As stated in the Incident Report that while performing a routine cell search of cell 4-3, the reporting officer found two small bags of a tan colored substance wrapped tightly in cellophane. The bags were found in the bottom of the right hand door of the lower unsecured wall locker. The substance was tested using the NIK test kit A, and resulted in a positive reading for Amphetamines. Inmate Hansard was housed in cell 4-3 and used the lower locker where the substance was found.
>
> The DHO considered inmate Hansard's statement he just arrived in the cell and knew nothing about the drugs. However, inmates are responsible for keeping their areas free from contraband. Since the reporting officer indicated inmate Hansard used the lower locker, it is reasonable to conclude he had frequent access to this area.
>
> The inmate was found to have committed the prohibited act(s) as charged, based on the greater weight of the evidence.

(Docket No. 9-3 at 13). The reasons stated for the sanctions imposed were:

> Possession and/or use of illegal drugs, is against Federal Law and has historically been a factor in producing inmate behavior which seriously disrupts the security and orderly operation of the institution. Such behavior cannot be tolerated as it jeopardizes the security of staff and inmates. Sanctions were imposed to express the gravity of the offense and hopefully deter the inmate from actions in the future. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.

(Docket No. 9-3 at 13). This court finds that the DHO's decision is supported by "some" evidence, namely, the contraband, which tested positive for Amphetamines and which was found in the locker area used by the petitioner, and petitioner had been housed there for not an insignificant period of time. This court finds that the DHO's decision

6

was not so lacking in evidentiary support so as violate due process.

The court notes that the petitioner contends that his due process rights were violated because the institution did not follow its own rules and regulations in connection with his disciplinary hearing when it failed to have the substance that it alleged to be a narcotic tested and analyzed by a laboratory as required by Program Statement 6060.08 or 28 C.F.R. §§ 550.30 and 550.42.  As correctly asserted by the respondent, however, the regulations cited by the petitioner concern urine testing for drugs.  They do not require substances discovered in an inmate's cell to be sent to an outside laboratory for identification or analysis.  Furthermore, the Program Statement cited by the petitioner likewise does not require the facility to send out such substances to be sent to outside laboratories for analysis.  Instead, it specifically provides that the institutions are to maintain a supply of Narcotic Identification Kits ("NIK") to determine the identity of unknown substances, requires that all Bureau of Prisons lieutenants be proficient in using NIKs, and indicates that they are ordinarily responsible for testing unknown substances.  (Docket No. 9-3 at 32).  This policy was followed in the petitioner's case when the substance discovered in his locker area was tested by Lieutenant D. Diehl using a NIK test.  (Docket No. 9-3 at 37).  Therefore, there is no factual basis to support petitioner's claim that the institution did not follow its own rules and regulations.

Petitioner makes a very conclusory claim in his petition that he has been deprived of equal protection during the course of his disciplinary procedure because he had the right to have the substance that was alleged to be a narcotic tested by a laboratory as it has been done for other inmates who have been similarly situated.  To prevail on an equal protection claim, he must show that the government has treated him

7

differently than others who are similarly situated.  See Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996).  Petitioner has made no such showing here, and habeas relief is not warranted on such claim.  It has been established that the facility followed the Program Statement cited by the petitioner.  Petitioner has made no showing that other similarly-situated inmates had substances tested by an outside facility rather than by a NIK.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 **(Docket No. 1)** be **denied and dismissed**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  March 8, 2011                                              s/ Michael J. Watanabe
       Denver, Colorado                                       United States Magistrate Judge